BECKWITH et al. v. THOMPSON et al.

(Circuit Court of Appeals, Fourth Circuit.   October 2, 1894.)

No. 65.

1. PLEADING AND PROOF—VARIANCE.
   In an action for breach of contract, the introduction of evidence by defendant, which plaintiff denies, that the contract was made with reference to another contract, by which there would be no breach, does not constitute a variance, but merely a conflict of evidence.

2. INSTRUCTIONS—NOTICE—ACQUIESCENCE.
   An instruction that if, at the time plaintiff contracted with defendant to do work which defendant had contracted to do for R., plaintiff had no notice of a provision in the contract between defendant and R. giving R. power to limit the amount of work which should be done within a certain time, plaintiff could recover damages for the enforcement by R. of the restrictive power, is not erroneous, as excluding the question of plaintiff's acquiescence in the provision, as he could not have acquiesced at the time, if ignorant of it, and subsequent acquiescence, being enforced, would not prevent his recovery.

3. EVIDENCE—EXPLAINING ENTRIES IN BOOKS.
   Where plaintiff claimed that he, as subcontractor, was to have all that defendant, as contractor, was to receive for doing certain work, and defendant claimed that plaintiff was to receive only 90 per cent. of the amount, and the defendant's books, which were in evidence, showed that plaintiff was first credited with 90 per cent., and then with the remaining 10 per cent., defendant's bookkeeper may testify that he made the extra credit of 10 per cent. on the statement of plaintiff, not in defendant's presence, that he was entitled to it.

4. ASSUMPSIT—COMMON COUNTS.
   Under the common counts in assumpsit, recovery may be had for necessary expenditures in obtaining possession of property bought of defendant, failure to give possession without such expenditure being a breach of defendant's contract.

In Error to the Circuit Court of the United States for the District of West Virginia.

Action by Thompson Bros. against Beckwith & Quackenbush for work done and breach of contract.   Judgment for plaintiffs. Defendants bring error.   Affirmed.

Beckwith & Quackenbush were under contract with the Norfolk & Western Railroad Company for doing the grading and masonry on 30 miles of the Ohio extension of said company's railroad.   About the 1st of January, 1891, a contract was made between Beckwith & Quackenbush and Thompson Bros., under which Thompson Bros., as subcontractors, agreed, among other things, to do the grading on about 13 sections or miles of this contract, for which Thompson Bros. were to be paid the same price as that received by Beckwith & Quackenbush from the railroad company, less 10 per cent.   The contract required that the work on the 13 sections should be completed by the 1st October following, the value of work each month amounting to about $10,-000.   At the time this contract was made, Beckwith & Quackenbush had already done a part of the grading and masonry on six of the sections; and for the purpose of prosecuting their work a certain camp and outfit, known as "Camp Simpson," was placed at the upper end of their work, and at its lower end another camp and outfit, known as "Big Creek,"—both of said

camps and outfits consisting of buildings, merchandise, and supplies. By the terms of their contract with Beckwith & Quackenbush, Thompson Bros. were to receive credit for all the grading previously done on said sections by Beckwith & Quackenbush, and agreed to purchase from Beckwith & Quackenbush the said camps and outfits at the price of $5,030.80, of which the amount paid for the buildings at Camp Simpson was $1,068, and for the buildings at Big Creek $234.72. Under the contract between the railroad company and Beckwith & Quackenbush, there was a restrictive clause giving to the railroad company the right to restrict from time to time the amount of work to be done by the contractors. Points of difference soon arose between Thompson Bros. and Beckwith & Quackenbush as to the terms of their contract. Thompson Bros. claimed that they were not to be charged with the cost of the grading already done upon said sections by Beckwith & Quackenbush, if the work showed a loss; that they did not know of the said restrictive clause contained in the railroad contract, and never agreed to be bound by its provisions; that they were to have immediate possession of all the buildings at said camps; and that for all work done outside of the regular work, and known as "extra work," they were to receive the full amount paid by the railroad company to Beckwith & Quackenbush, without deduction. Beckwith & Quackenbush claimed that, under the terms of the contract, Thompson Bros. agreed to be bound by all the provisions of the railroad contract, including the restrictive clause, and that Thompson Bros. had examined the railroad contract before making their own; that Thompson Bros. were informed that one of the buildings at Camp Simpson was in possession of a man named Simpson, who was occupying the same under a previous contract, and agreed to pay whatever Simpson required, to give up possession; that Thompson Bros. were to be paid for extra work the same percentage as for regular work, namely, 90 per cent. of the amount paid by the railroad company to Beckwith & Quackenbush; and that Thompson Bros. were to be charged with the actual cost of the grading already done on the 13 sections by Beckwith & Quackenbush, whether the work showed a loss or not. These points of difference were submitted to the jury which passed upon the facts of the case in the court below. Thompson Bros. arrived with their forces upon the ground, to commence work, about the 1st day of February, 1891, and, in order to get possession of the building occupied by Simpson, paid him the sum of $500. About the 10th day of March, 1891, and after Thompson Bros. had been doing the work of grading about one month, the railroad company, under the restrictive clause in its contract, notified Beckwith & Quackenbush not to do work on said 30 miles exceeding in value in each month the sum of $6,000, which covered both grading and masonry. This is a reduction by four-fifths of the work that had been done on the whole 30 miles of contract, and reduced the third of Thompson Bros. from about $10,000 a month to about $2,000. This restriction was continued by the railroad company until about the 1st day of October, 1891, when the contract between Beckwith & Quackenbush and the railroad company was terminated by mutual consent, thereby also terminating the contract between Thompson Bros. and Beckwith & Quackenbush. During all this time, Thompson Bros. continued their work of grading upon the said sections embraced in their contract with Beckwith & Quackenbush.

On the 7th day of April, 1892, Thompson Bros. instituted this action of assumpsit against Beckwith & Quackenbush in the circuit court of Wayne county, W. Va., from which court the case was removed by Beckwith & Quackenbush to the circuit court of the United States for the district of West Virginia on the 31st day of May, 1892, and duly docketed therein on the 11th day of November, 1892. After the case was removed to the federal court the plaintiffs, on the 7th day of December, 1892, filed a new declaration in lieu of their former one; and on this new declaration, upon the issues of nonassumpsit, payment, and set-offs, the case was finally tried before a jury. The declaration contained the five common counts, and also five special counts. The first special count was for the amount due for work actually done under the contract, set out in detail in a bill of particulars, the balance shown by the bill being $9,171.71. The second special count was for profits which it was claimed would have been realized by plaintiffs below if the reduction of the amount of work from $10,000 to $2,000 per month had not

been made. But this claim for estimated profits was abandoned before the case went to the jury. The third special count was for losses or damages sustained generally by the restriction of work. The fourth count was for losses resulting from having a large quantity of materials and large numbers of live stock on hand in an inaccessible region, which were a cost on their hands. The fifth count was similar in the character of its claim for damages to the fourth, drawn in different form. With the declaration were filed several bills of particulars; one showing the balance due on work actually done, and the others showing the losses and damages, by items, which the plaintiffs contended they had sustained. One of the questions at issue between the parties to the trial was as to the liability of the defendants below for the $500 paid by plaintiffs to Simpson for the possession of a building at Camp Simpson. This payment was not made the subject of a special count in the declaration, but was put before the jury in two or more of plaintiffs' bills of particulars filed with the declaration. The case went to the jury on the 7th December, 1891, and was under trial for eight days, until the 16th, when the jury rendered a verdict in favor of plaintiffs below, awarding them damages to the amount of $9,782.26, and stating that this sum was due after deducting all credits and offsets to which the defendants were entitled. Motion was at once made by the defendants below to set aside the verdict, and for a new trial, which was denied, and judgment in due course entered for the amount of the verdict.

In the course of the trial three several bills of exceptions were taken to rulings of the court. The first recited at length the evidence which the plaintiffs had introduced before the jury in support of their suit, including, besides the more important items of this claim, the payment of the $500 for the Camp Simpson building. It then recited that the plaintiffs were allowed by the court to give evidence tending to prove that the defendants had broken their contract by restricting the monthly amount of work allowed to be done, as heretofore described; had also terminated the contract about the 1st of October, 1891, although at the time of making the contract the plaintiffs had no knowledge of the restrictive and terminative clauses in the contract which had already been made between defendants and the Norfolk & Western Railroad Company. It further recited that, after the plaintiffs rested their case, defendants moved the court to exclude from the jury the plaintiffs' evidence, so far as it related to the special counts, on the ground, as alleged, that the contract proved by the plaintiffs' evidence was substantially variant and different from the contract set out in the special counts of the declaration, which motion the court had overruled. In their second bill of exceptions the defendants recited that they introduced evidence tending to prove that, by the terms of the contract between the parties to the suit, the plaintiffs had agreed to be bound by all the provisions of the contract then existing between defendants and the Norfolk & Western Railroad Company, and that when this contract was finally terminated by the parties to it the plaintiffs advised, approved, and consented to this action, and that, thereupon, on plaintiffs' motion, the court instructed the jury as follows: Instruction No. 1: "The court instructs the jury that if they find from the evidence in this cause that the plaintiffs, Thompson Bros., contracted with Beckwith & Quackenbush to construct certain portions of the Ohio Extension of the Norfolk & Western Railroad, embraced by sections 91 to 95, inclusive, and 71 to 77, inclusive; that Beckwith & Quackenbush did not at the time communicate to them the existence of the restrictive clause in their contract, or they did not have notice otherwise of its existence,—then Thompson Bros. would be entitled to recover all such damages, other than speculative or remote, that grew out of the enforcement of the restrictive clause and the suspension of the work by the railroad company." To this instruction the defendants excepted on the alleged ground that it withdrew from the jury the question whether or not the plaintiffs had accepted and acquiesced in the restriction of the work, and subsequent termination of the contract complained of. It also recited that the court gave the following two instructions to the jury: No. 2: "The court further instructs the jury, that if they find from the evidence in this cause that, at the time the plaintiffs contracted with the defendants to do the work referred to in the first instruction given by this court, they knew the terms and conditions of the contract between the railroad com-

pany and Beckwith & Quackenbush, and they contracted with knowledge of these terms and conditions, they then are bound by the terms and conditions of that contract, and they cannot maintain their action to recover any damages that might ensue by reason of the enforcement of restrictive clauses in the contract." No. 3: "The court instructs the jury that if the plaintiffs made their contract with the defendants for doing the work hereinbefore referred to, and agreed with the defendants to be bound by the provisions of the contract between the defendants and the railroad company, then the plaintiffs would be bound by such provisions, whether they ever read the contract or saw it. But if the jury find from the evidence that only a portion of the provisions of the contract were agreed to, and not the entire contract, then the plaintiffs would only be bound by such provisions as were agreed to." The third bill of exceptions related to the admission of the testimony at the trial before the jury of the defendants' bookkeeper, Glenn. The contention of plaintiffs was that the extra work done by them was to be paid for without deduction of 10 per cent., as agreed to on regular work, while the defendants insisted to the contrary. Glenn testified, in substance, that he had first entered certain extra work to the credit of plaintiffs, reduced by the 10 per cent., and that afterwards the 10 per cent. was entered to the credit of plaintiffs, on a statement by one of them to him of the reason and propriety of this correction, which statement was made not in the presence of either of the defendants. The bill of exceptions recited that the court overruled the motion of defendants to strike out this testimony, and that defendants excepted to the ruling.

Malcolm Jackson and George E. Price, for plaintiffs in error.

F. B. Enslow, for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge (after stating the facts). This case is here on a writ of error issued upon a petition imputing three several errors in the trial below. The first one assigned was the denial by the court below of defendants' motion to strike out plaintiffs' evidence because of variance. The second error assigned was in giving instruction No. 1 (recited in bill of exceptions No. 2), wherein the court charged the jury that if they believed from the evidence that the defendants below had not made known to plaintiffs, when contracting with them, the restricting provisions contained in defendants' contract with the railroad company, and that plaintiffs had not otherwise had notice of these provisions, the plaintiffs would be entitled to recover actual damages resulting from enforcing the restrictions. Defendants assign as their objection to this instruction that the court, in giving it, virtually instructed the jury that the questions whether or not the plaintiffs below had accepted and acquiesced in the restrictions, and whether or not the plaintiffs had approved of the final canceling of the contract with the railroad company, could not affect the damages claimed by the plaintiffs. The third error assigned was the court's allowing to go to the jury the testimony of Bookkeeper Glenn, stating what a plaintiff below had said to him, not in the presence of defendant, as the reason for directing him to change an entry in his books.

As to the objection of variance, it nowhere appears, either in the record or in the briefs of counsel, whether or not the contract which is the subject of this litigation was oral or in writing. The

inference is strong that it was merely oral, however improbable such a fact may seem. It is also to be observed that plaintiffs in error nowhere, either in their pleadings or brief, give a distinctive statement of the points of difference which they claim to exist between the plaintiffs' declaration and proofs. The differences relied on are left to the conjecture of the appellate court. As to the alleged variance, and what it consisted in, the facts seem to be as follows: (1) The plaintiffs below declared upon their own contract with the defendants; their theory being that it was not amenable to the provisions of defendants' contract with the railroad company, authorizing a restriction of monthly work and a termination of all work, at the will of the company, and that it allowed them full pay on extra work. (2) They introduced evidence to prove their ignorance when they made their own contract of the restrictive and terminative provisions of the previous contract, and of the contention as to the extra work. (3) The defendants below, per contra, introduced evidence to prove these provisions, and that the plaintiffs were aware of their existence at the time they contracted, and acquiesced in and consented to them when they were enforced during the progress of work under the contract. They also produced evidence as to the extra work. We do not think such a state of facts constitutes a variance. The plaintiffs declared, in their special counts, on those provisions of their own contract on which they claimed the damages they sustained from not being allowed to do the full amount of work contemplated by the contract, for which they had made expensive preparations. They were not bound to set out provisions of another contract, to which they were not parties, not necessary to making out their own case. They did state enough to make a case, independently of those provisions. They alleged that the defendants were cognizant of the expensive preparations which they were making for executing the work in the time required, and yet gave them no warning against making these heavy expenditures for that purpose. This itself might, in the opinion of a jury, have entitled them to recover the damages resulting for the restriction and final stoppage of the work, and justified the court below in refusing to strike out the evidence. But, be this as it may, if the defendants below gave evidence to set up at the trial provisions of another contract, tending to defeat, in the opinion of a jury, the plaintiffs' claim for damages, such evidence did not establish a variance between declaration and proofs. Take a case for illustration. A plaintiff declares upon one or more provisions of a contract. The defendant, in reply, proves additional provisions, which the plaintiff denies. This does not constitute a variance. The establishment of the additional provisions may defeat the plaintiff's action, in the opinion of a jury. It may convict the plaintiff of false clamor. But this is a matter of weight of evidence, is a matter for the jury, and is not a matter for which a court may dismiss the suit for variance between allegata and probata. In the case at bar the plaintiffs did not declare, even upon their own contract, in ipsissimis verbis. They did not recite its language. And the defendants did not prove a dif-

ferent contract, expressed in different language, importing different meaning. There was no pleading on either side precise enough in language to establish a technical or real variance. The constituents of a variance must be more distinct and tangible, and less vague and indefinite, than any differences appearing between the declaration and proofs in the case at bar. We think, therefore, that the objection of variance must be overruled.

The second assignment of error seems to us untenable. The plaintiffs deny their knowledge of the existence of the restricting provisions of the contract of defendants below with the railroad company, when they made their own contract with defendants. Instruction No. 1, which is complained of, relates especially to the time when the latter contract was made. It is therefore difficult to conceive how a person who has no knowledge of an alleged provision in a contract to which he is not a party can be deemed to have acquiesced in and approved of it. The inquiry directed by the instruction necessarily embraced the two questions claimed to have been suppressed. The objection assigned to instruction No. 1 is that it withdrew from the jury the question whether or not plaintiffs acquiesced in and approved the provisions of the contract with the railroad company. If plaintiffs did not know of, they could not have approved them. But the objection is untenable whether the alleged acquiescence and approval by the plaintiffs were at the time when they made their contract, or afterwards. By the negligence of the manager a plaintiff is injured by machinery so seriously that, to save his life, one of his legs must be amputated, and he acquiesces, and consents to the operation. This acquiescence and consent do not affect his right to damages resulting from the injuries received, even from the amputation itself, in which he acquiesced. If the plaintiffs below were ignorant of the restricting and terminating provisions of the contract with the raiload company when they made their own, and, not being forewarned of their existence, went on to make expensive preparations for executing the work, before they obtained knowledge of them, they were entitled to recover the damages resulting, whether they afterwards submitted to these provisions or not. What they subsequently approved of or acquiesced in, either positively or impliedly, did not affect in any way their right to recover. They may have done many things to reduce their losses to a minimum without prejudice to their right to damages. They did do much. But, whether successful or not in this direction, they were entitled to the actual damages sustained, whatever they may have done to reduce their loss. The court below properly left this matter to the jury, contenting itself with charging that plaintiffs were entitled to recover only actual losses.

The third assignment of error is that the court below allowed Bookkeeper Glenn to give in evidence what one of the plaintiffs told him,—not in the presence of either of the defendants,—as the reason for directing him to change one of the entries he had made in his books. This testimony was given by Glenn in explanation of an entry in books which were themselves in evidence before the

jury. Witness was asked why this entry was made. He answered, stating his reason for making it. This he could not do fully, except by stating what one of the plaintiffs had said to him. It is settled law that when books of account are introduced collaterally, and become evidence in a cause, the reason why this and that entry is made in them can be explained by parol testimony, and such evidence is valid whenever and to the extent that it is necessary to the development of the whole truth of the matter. In the case at bar it was not only competent for the bookkeeper to state what he did, but it would have been error if the court had excluded the statement. His statement went only to explaining the making of the entry. It did not go to establishing the truth of the plaintiffs' contention in respect to the propriety of the entry. The objection of plaintiffs in error to this testimony is therefore overruled.

A further ground of error set out in one of the bills of exceptions, though not assigned in the petition for the writ, relates to the $500 which was paid by plaintiffs below for immediate possession of the building at Camp Simpson. Defendants below object to the ruling of the court below in allowing this item to go before the jury. Their reason for the objection is that the item was not recoverable under the common counts of the declaration, and that there was no special count claiming this sum of money. This payment to Simpson was necessary to obtaining prompt possession of the principal building at Camp Simpson. As such it was a necessary expenditure in preparing for the performance of the contract. Failure on the part of defendants below to give possession without this preliminary expenditure by plaintiffs was a breach of contract on their part, and an implied promise of the defendants arose to repay this necessary preliminary expenditure of the plaintiffs, and the item was recoverable in one of the common counts in assumpsit. In two of the bills of particulars filed with the declaration this item was included, and there was no surprise put upon the defendants below in respect to the claim. We think the contention of the defendants below in respect to this $500 is untenable, and it is accordingly overruled. On the whole case, we see no error in the rulings of the court below, and we affirm the judgment there rendered